

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-14-00230-CR

_____

NICK N. FEIZY, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law No. 4
Collin County, Texas
Trial Court No. 004-80265-2014

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

The evidence is conflicting surrounding the confrontation between Nick N. Feizy and his wife, Lauren, in late 2013 at their Plano[1] residence. As a result of that confrontation, Feizy has been convicted by a Collin County jury of assault causing bodily injury to a family member,[2] assessed a $250.00 fine, and sentenced to 180 days' confinement in the county jail. On appeal, Feizy contends the evidence was insufficient to support the judgment because of a lack of evidence showing bodily injury or linking him to any injuries suffered by Lauren. Because we find legally sufficient evidence supporting the trial court's judgment, we affirm.

In reviewing the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Bell v. State*, 326 S.W.3d 716, 720 (Tex. App.—Dallas 2010, pet. dism'd) (citing *Brooks*, 323 S.W.3d at 898). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the trier of fact "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19). "We defer to the jury's

---

[1]Originally appealed to the Fifth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T. CODE ANN. § 73.001 (West 2013). We are unaware of any conflict between precedent of the Fifth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

[2]*See* TEX. PENAL CODE ANN. § 22.01(a)(1), (b)(2) (West Supp. 2014).

determinations of the witnesses' credibility and the weight to be given their testimony because the jury is the sole judge of those matters." *Bell*, 326 S.W.3d at 720 (citing *Brooks*, 323 S.W.3d at 899).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by the "hypothetically correct jury charge." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *Horton v. State*, 394 S.W.3d 589, 592 (Tex. App.—Dallas 2012, no pet.) The hypothetically correct jury charge "'accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Horton*, 394 S.W.3d at 592 (quoting *Malik*, 953 S.W.2d at 240).

Based on the information and the statute, the State had to prove that Feizy (1) intentionally, knowingly, or recklessly (2) caused (3) bodily injury to (4) Lauren (5) by grabbing, scratching, or pinching her (6) with his hand and that, at the time, (7) Lauren was a member of his family. *See* TEX. PENAL CODE ANN. § 22.01(a)(1), (b)(2). "Bodily injury" is defined as "physical pain, illness, or any impairment of physical condition." TEX. PENAL CODE ANN. § 1.07(8) (West Supp. 2014).

Feizy challenges the sufficiency of the evidence only as to the two elements (1) that Lauren suffered any bodily injury, specifically, physical pain, and (2) that he caused any bodily injury suffered by Lauren. Feizy argues that the only evidence of injury to Lauren was that she suffered a neck injury, and that no evidence implicates Feizy as the cause of that injury. Further, Feizy argues that, although Lauren claimed injury to her neck caused her pain, it was conclusory and nonspecific as to the type of pain—physical or emotional—and thus was insufficient to establish

3

bodily injury.[3]  Finally, he argues that Lauren's testimony that Feizy pinched her and poked her with a dental tool was insufficient to support an inference that she experienced physical pain, as opposed to emotional pain.  The State argues that the testimony of Lauren and Officer Alec Newtown regarding Lauren's injuries, Lauren's testimony regarding how the injuries occurred and that they were painful, and the photographs depicting those injuries are sufficient to support an inference by the jury that Lauren suffered physical pain.  In addition, the State argues that Lauren's trial testimony and her 9-1-1 call establish that Feizy caused the bodily injury to Lauren.  We agree with the State that there was sufficient evidence for a reasonable jury to find that Feizy caused bodily injury to Lauren.

As might be expected, Feizy and Lauren had widely varying accounts of what happened on the occasion in issue.  According to Lauren, she had picked up their two sons at daycare after work.  She returned to their house and found Feizy asleep on the couch.  When he got up, he was angry and may have been intoxicated.  Nevertheless, he insisted on taking their oldest son, Sean,[4] to his swimming lesson.  After returning from the lesson, Feizy asked if Sean's dinner was ready.  When he found out that it was not, he became angry and began yelling at Lauren.  She got Sean and went to the master bedroom to work out on the exercise machine.  In a little while, Sean was in the bathtub, and Feizy was picking at his teeth with a dental tool.  When Sean said, "I want to

---

[3]Feizy cites *In re M.C.L.*, 110 S.W.3d 591 (Tex. App.—Austin 2003, no pet.), for the proposition that, when there is uncertainty regarding whether the accused caused the injuries, the evidence is insufficient.  However, in that case, the Court of Appeals held that the evidence was factually insufficient when the alleged victim testified that he did not suffer any injuries in his struggle with the accused and when the only other testimony regarding cuts he received made it unclear whether the cuts were received in the struggle.  *Id.* at 600.  In this case, Lauren's testimony is unequivocal that she suffered bodily injuries at the hands of Feizy.

[4]We will refer to the oldest son using the pseudonym "Sean" to protect his privacy.  *See* TEX. R. APP. P. 9.10(a)(3).

see mommy," Feizy slammed the bathroom door. Lauren got off the exercise machine and opened the door, but Feizy slammed it again. Lauren then entered the bathroom, bathed Sean, and dried him off. All this time, Feizy was yelling at her and calling her demeaning names. Feizy began pinching her on her stomach, side, and back. At the same time, he was playing with Sean, laughing and saying, "Mommy's crazy." Lauren was crying, while Feizy kept making fun of her. He also would tickle Sean, then poke Lauren with the blunt end of a dental tool. Feizy then left the bathroom, shut the door, and would not let Lauren and Sean out. She told him that he was scaring Sean, and he opened the door and pushed her into the bathroom. When he walked away, Lauren ran to get her phone and called 9-1-1. While she talked with the 9-1-1 operator, Feizy had her trapped between the bed and a wall. After she called 9-1-1, Feizy also called 9-1-1. She testified that, when the officers got to the house, she had visible marks on her neck. Regarding photographs of injuries that were introduced at trial,[5] Lauren testified that Feizy had caused the injuries by digging his fingers into her skin. She also testified that, when he pinched her and used the dental tool on her, it caused her pain. Since the injuries were not permanent, she did not seek medical attention.

Lauren's 9-1-1 call was published to the jury. Throughout the call she is heard crying. She told the operator that her husband had hurt her and that he pinched her on the neck and side. She also told the operator that he had locked her in the bathroom, that he was calling her "crazy" and that her son was scared. Feizy's 9-1-1 call was also published to the jury. He is heard telling the

---

[5]State's Exhibits 3 and 4 show marks on Lauren's neck described by the investigating officer as "light reddening." State's Exhibits 5, 6, and 7 show at least one mark on Lauren's back or side described by the investigating officer as "red marks" and "scratches."

operator that his wife is calling again and that she is crazy, bipolar, and being ridiculous. He says everything is fine and does not know why she called. In the background of Feizy's call, a woman can be heard crying.

Officers Newtown and William Rollins responded to the 9-1-1 calls. The officers talked with both Feizy and Lauren to determine what had happened. Both officers testified that Lauren was crying and upset. Newtown testified that he saw redness on Lauren's right side, consistent with pinching, red marks on the right side of her back that appeared to be scratches, and light reddening on the left side of her neck. Both officers testified that photographs taken of Lauren were consistent with what they observed that night. Newtown also testified that Lauren told him her injuries were painful. Rollins testified that Lauren told him Feizy had inflicted her injuries.

Feizy told a very different story, both that night and at trial. That night, he initially told the investigating officers that the argument started when Lauren would not let Sean come to him and that she told the child that Feizy beats her. He also told the officers that Lauren had had an eating disorder in the past, has mental problems, and is possibly bipolar. Feizy was calm and told them that Lauren had made false claims against him in the past. Feizy did not complain of any physical injuries at the time, and none were apparent. Newtown testified that Feizy's breath had a moderate odor of alcohol. When asked, Feizy denied that the argument had gotten physical. After the officers talked with Lauren and observed the areas on her person about which she complained, they talked with Feizy again. At that point, Feizy claimed that Lauren had pushed him and inflicted her own injuries. At some point, he also told the officers that Lauren had been

6

calling him names. Newtown also testified that Feizy's hands looked normal and that Newtown did not recover a dental tool.

At trial, Feizy denied assaulting his wife, grabbing her neck, or poking her with a dental tool. He testified that, on the morning of the incident, Lauren got mad over a misunderstanding involving their children. After work, Feizy returned home around 4:35 p.m. and received a text message from Lauren stating she was picking up the boys from daycare. When she arrived home around 5:30 p.m., she began yelling and screaming at him and calling him names. She accused him of cheating on her, because he had not immediately answered her texts. He denied her accusation of cheating. According to Feizy, Lauren insisted that he take Sean to his swimming lesson. When they returned home, he fixed Sean dinner, then went to give him a bath. When they went through the master bedroom to get to the bath, Lauren, who was on a treadmill, immediately started cursing him and calling him demeaning names. He closed the bathroom door so Sean could not hear her, but she aggressively opened the door and said she wanted it open. He told her that, if she stopped cursing, he did not mind leaving it open. However, she returned to the treadmill and began cursing again. He closed the door again and began undressing Sean to give him a bath. Lauren opened the door again, hitting him with it, pinched his bicep three times, and took Sean away from him. He claimed that the pinch left a mark and introduced a photograph, allegedly taken several days after the incident, showing a bruise on his bicep. After Lauren grabbed Sean, Sean became fearful and began crying. Feizy testified that Lauren was being very erratic and irate, squeezing and hurting Sean. Sean was holding his hands out and saying he wanted to go to his daddy, but she would not let him. Feizy said he begged Lauren to let Sean go, but she refused and

7

backed into the toilet area of the bathroom. When she did so, she hit the striker plate on the door frame with her back. He explained that the toilet area is very small, and he speculated that she also must have hit the window ledge. He testified that Sean continued to scream and cry. He said he continued to plead with Lauren to open the door and let Sean go, and she finally opened the door. At that point, Sean was pushing off her neck and yanking on her necklace and saying, "I want to go to daddy." She finally let Sean go, and Feizy took him out of the bathroom. Lauren started screaming and cursing at him and said she was going to call the police. Feizy said he told her to go ahead, and she did, then he called the police also. He explained that he did so because she was making false accusations. He said he did not tell the police about her pinching him because he did not want to cause any trouble. He then took Sean outside and waited for the police. He testified that, when the police got to their home, he told them Lauren pushed him. When they asked if he wanted to press charges, he told them, "Absolutely not. I don't want to see the mother of my children and my wife in jail." On cross-examination, Feizy admitted that he did not have any evidence that his wife had been treated for any mental disorder. Although he claimed that Lauren had sought therapy for her mental problems, he could not provide the name of any therapist she may have seen. He admitted that he told the officers on the night of the incident that he was not injured. He also admitted that he had not told the officers that Lauren had pinched him and that he did not show them any injuries.

The definition of "bodily injury" is broad and "encompasses even relatively minor physical contacts so long as they constitute more than mere offensive touching." *Lane v. State*, 763 S.W.2d 785, 786 (Tex. Crim. App. 1989). Proof of bodily injury does not depend on the degree of violence

8

used or the degree of injury suffered by the victim as long as some resulting physical pain, illness, or impairment of physical condition can be identified. *See id.* at 786–87; *see also Arzaga v. State*, 86 S.W.3d 767, 778 (Tex. App.—El Paso 2002, no pet.) ("existence of cut, scrape, or bruise sufficient evidence of physical pain necessary to establish 'bodily injury' within meaning of statute"). Direct testimony that the victim suffered physical pain is also not required. *See Arzaga*, 86 S.W.3d at 778–79. Since a jury is capable of understanding pain and what may cause pain, it may infer that the victim suffered physical pain based on the circumstances of the injury. *Garcia v. State*, 367 S.W.3d 683, 688 (Tex. Crim. App. 2012); *see Randolph v. State*, 152 S.W.3d 764, 774 (Tex. App.—Dallas 2004, no pet.) (physical pain inferred from statement by victim that assailant had hit her in back of head). Further, "[a] jury may use their common sense and apply their common knowledge, observations, and experience to draw reasonable inferences about whether or not an act results in pain." *In re I.L.*, 389 S.W.3d 445, 455 n.7 (Tex. App.—El Paso 2012, no pet.) (citing *Lane*, 763 S.W.2d at 786–87).

At trial, Lauren testified that Feizy pinched her stomach, side, and back, digging in his fingers, and stabbed her with the blunt end of a dental tool. She affirmed that, when he pinched her and used the dental tool, it caused her pain. Further, on her call to 9-1-1, Lauren is heard crying and telling the operator that her husband hurt her and that he pinched her in the neck and side. In addition, photographs showing Lauren's injuries to her neck and side or back were introduced at trial. The investigating officers confirmed Lauren's injuries, describing them as redness on Lauren's right side, consistent with pinching, red marks on the right side of her back that appeared to be scratches, and a light reddening on the side of her neck. Newtown also testified that Lauren

9

told him her injuries were painful, and Rollins testified that she told him that Feizy had inflicted her injuries. Although Feizy offered a different version of how Lauren received her injuries and why she made her accusation against him,[6] the jury is the sole judge of the witnesses' credibility and the weight to be given to their testimony. Viewing this evidence in the light most favorable to the verdict, we find that a reasonable jury could find beyond a reasonable doubt both that Lauren suffered physical pain, not merely emotional pain, and that Feizy inflicted that pain on her. Therefore, there is sufficient evidence to support the jury's verdict. We overrule Feizy's point of error

We affirm the judgment of the trial court.


Josh R. Morriss III
Chief Justice


Date Submitted:     June 4, 2015
Date Decided:       July 2, 2015

Do Not Publish

---

[6]At trial Feizy attempted to show that Lauren's accusation arose from an attempt to gain an advantage in their pending divorce proceeding.

10