**Latasha Ann HORTON, Appellant**

v.

**The STATE of Texas, Appellee.**

**No. 05–11–00413–CR.**

Court of Appeals of Texas,
Dallas.

Aug. 22, 2012.

Celia M. Sams, Rowlett, for Appellant.

Heath Grob, Asst. Criminal Dist. Atty., Rockwall County, for Appellee.

Before Justices FITZGERALD, MURPHY, and FILLMORE.

## OPINION

Opinion By Justice FILLMORE.

Latasha Ann Horton appeals her conviction for forgery of a financial instrument. After the jury found her guilty, the trial court sentenced Horton to one year of confinement. In two related issues, Horton contends the evidence is legally insufficient to support the State's allegation that she presented a forged check that "purported to be a copy of an original when no such original existed." We agree with Horton, reverse the trial court's judgment, and render a judgment of acquittal.

## Background

Leah Holl, a senior teller for the Bank of America, testified she was working at the Bank of America in Rockwall, Texas, when Horton came to Holl's window and presented a check made out to Horton in the amount of $6,300 to be cashed. Holl, following bank policy, asked for two forms of identification. Horton gave Holl a driver's license and a credit card. According to Holl, the photograph on the driver's license "looked similar" to Horton. Holl then attempted to verify the check. When she did so, she noticed the check was

different from previous checks that had been cashed from that account. In particular, the check itself was larger, the format of the check was different, and the signature on the check presented by Horton was "way different" from the signature of the owner on the account and the signatures on other checks that had been written on the account. Holl called her supervisor, Jennifer Scott, who took over further verification of the check. While Scott was doing so, Horton returned to her car and then came back in the bank and asked Holl to return Horton's driver's license. Holl told Horton she could not return the driver's license because they were using it to verify the check. According to Holl, Horton was becoming anxious during the wait. Eventually, Horton got into her car and drove away. A short time later, a police officer arrived, and Holl gave the officer the check, the driver's license, and the credit card. She also gave the officer a description of the car Horton was driving, including the license plate number.

Scott testified she was working with Holl the day Horton presented the complained-of check. Holl asked Scott for help verifying the check because it was for a large amount and the "signatures weren't matching up." Scott looked at "check images, signatures, check characteristics, everything on there. [And, she] couldn't find anything that matched up." According to Scott, the font on the check was different from previous checks on the account, the check was handwritten instead of typed like previous checks on the account, and the check number was not within the range of checks that had been written on the account. Scott then tried to contact the account holder, Keith Weiser (Weiser) of Squaw Mountain Whitetails, LLC. She called one of the telephone numbers listed on the account and reached a man on the telephone. When Scott asked the man some questions regarding the account, the man had "a hard time answering the questions. He would constantly put [Scott] on hold and then answer." The man's answers were "very delayed and not typically the exact answer that I needed." For example, the man could not be specific about where the accounts had been opened. When Scott told the man she would not be able to cash the check unless he came in with Horton, he "was ugly." After speaking with the man on the telephone, Scott contacted the fraud investigative division of the bank. After speaking with the fraud division, Scott called the second account holder on the account, Eric Weiser (Eric), Weiser's brother. Eric was able to give her contact information for Weiser. When she spoke with Weiser, Scott was certain the first man she had spoken to was not Weiser. A short time later, Scott notified the police.

Weiser testified he and his brothers own and operate a business, Squaw Mountain Whitetails, LLC, and have a business account with Bank of America. He and his brother, Eric, are both signatories on the business account. The day Horton presented the complained-of check to the bank, Weiser received an on-line notification that his personal profile had been changed although he had not changed his profile. When he tried to access his accounts on-line, he was unable to do so. He called the bank and was told he needed to come to the bank to re-establish the security code and password on his accounts. Later that day, he was notified by the bank that someone had tried to pass a check on the business account. Weiser denied writing or authorizing the check that Horton presented to the bank to be cashed. He likewise denied knowing Horton and did not recognize her in the courtroom. Finally, Weiser testified that he possessed a check with the same number,

but it had not been written because it was at the end of the sequence of the checks that he had purchased for the account.

Stephen Nagy, a Rockwall police officer, testified he responded to Bank of America for a forgery investigation. When he arrived at the bank, he met with Scott and Holl. Holl described the car Horton was driving and gave him the license plate number for the vehicle. Nagy also took possession of the check Horton presented, as well as the driver's license and credit card she gave to Holl as identification. According to Nagy, the endorsement signature on the back of the check was similar to the signature on the driver's license. Nagy then prepared a report and forwarded it to the Rockwall Police Department investigator assigned to the case.

Jalena Page, a detective with the Rockwall Police Department, testified she was assigned to investigate the forged check. She contacted the bank and received photographs of Horton presenting the check to Holl. Page then compared the pictures to the picture on Horton's driver's license from the Texas Department of Public Safety database. According to Page, it appeared to be the same person. Page then determined the address on the driver's license was not a physical address, but rather was a post office box. Page contacted the bank that had issued the credit card Horton presented and Page was able to obtain an address for Horton. Page went to that address in Rowlett; however, Horton was not at the address. Page left a business card and asked for Horton to contact Page. About fifteen minutes later, Horton called Page. When Page asked Horton to come to the police department and talk with Page, Horton refused. Horton admitted to being in the bank and presenting the check, but claimed it was a paycheck she had received from an unidentified third person. Thereafter, Page completed her report and submitted the case to the Rockwall County District Attorney's office. Horton subsequently was indicted for forgery and arrested about six months after she was indicted.

After hearing this and other evidence, the jury found that Horton, with the intent to defraud or harm another, transferred or passed a forged writing, knowing such writing to be forged, and such writing had been so altered, made, completed, executed, or authenticated that it purported to be a copy of an original when no such original existed. Thereafter, the trial court assessed punishment at confinement for one year. This appeal followed.

## Discussion

We review the sufficiency of the evidence under the standard set out in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). *Adames v. State*, 353 S.W.3d 854, 859 (Tex.Crim.App. 2011), *cert. denied*, —— U.S. ——, 132 S.Ct. 1763, 182 L.Ed.2d 533 (2012). This standard measures evidentiary sufficiency against the substantive elements of the criminal offense as defined by law. *Byrd v. State*, 336 S.W.3d 242, 246 (Tex.Crim. App.2011). In Texas, we measure the sufficiency of the evidence "by the elements of the offense as defined by the hypothetically correct jury charge for the case." *Id.* (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App.1997)). Such a charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.* (quoting *Malik*, 953 S.W.2d at 240).

A "variance" occurs when there is a discrepancy between the allegations in the indictment and the proof offered at

trial. *Id.* A variance in pleading and proof can occur in two different ways. *Johnson v. State*, 364 S.W.3d 292, 294 (Tex.Crim. App.2012). First, a variance can involve the statutory language that defines the offense. *Id.* This can happen when a statute specifies alternate methods by which an offense could be committed, the charging instrument pleads one of those alternate methods, but the State proves, instead, an unpled method. *Id.* Second, a variance can involve a non-statutory allegation that is descriptive of the offense in some way. *Id.* Failure to prove the statutory language pled renders the evidence legally insufficient to support the conviction and is always material. *Id.* at 298.

■ A person commits forgery if, with the intent to defraud or harm another, she passes a writing that has been made to purport to be a copy of an original when no such original exists. *See* TEX. PENAL CODE ANN. § 32.21(a)(1)(A)(iii) (West 2011). A "copy" is an "imitation, transcript, or reproduction of an original work." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 504 (3d ed.1981). Horton does not dispute that she passed the complained-of check with the intent to defraud or harm another. Rather, she contends the State charged her with passing a forged writing that purported to be a copy of an original when no such original existed, but proved that she passed a forged writing that purported to be the act of another who did not authorize that act. *See* TEX. PENAL CODE ANN. § 32.21(a)(1)(A)(i). Thus, according to Horton, there is a material variance between the indictment and the proof and her conviction must be reversed. After reviewing the record, we agree.

■ Under section 32.21(a)(1)(A), "forge" means to alter, make, complete, execute, or authenticate any writing so that it purports: (1) to be the act of another who did not authorize that act; (2) to

have been executed at a time or place or in a numbered sequence other than was in fact the case; or (3) to be a copy of an original when no such original existed. TEX. PENAL CODE ANN. § 32.21(a)(1)(A). The State chose to indict Horton only for forgery by making a writing that purported to be a copy of an original when no such original existed. When the State selects the mode of charging a crime, it must prove the case as alleged. *See Avery v. State*, 359 S.W.3d 230, 237 (Tex.Crim.App. 2012). And, when construing a statute, we first look to the statute's literal text, and "we read words and phrases in context and construe them according to the rules of grammar and usage." *Id.* (quoting *Lopez v. State*, 253 S.W.3d 680, 685 (Tex.Crim. App.2008)). We may presume that each word in the statute has a purpose, and that words not defined in the statute are used in their ordinary and common sense. *Id.* (quoting *Prudholm v. State*, 333 S.W.3d 590, 594 (Tex.Crim.App.2011)). When consulting dictionaries for the meaning of a particular word, we look to the lexicographical alternatives the Legislature most likely had in mind, taking into account the context provided by the phrase, subsection of the statute, and overall statutory scheme in which the word appears. *Cornet v. State*, 359 S.W.3d 217, 222 (Tex. Crim.App.2012).

Section 32.21 provides it is a crime to present a writing that purports to be a copy of an original when no such original existed. An example of such a forgery is found in *McClellan v. State*, 701 S.W.2d 671, 672 (Tex.App.-Austin 1985) (op. on reh'g), *aff'd*, 742 S.W.2d 655 (Tex.Crim. App.1987). McClellan was a licensed attorney who sought a loan to be secured by a lien on a lot in an Austin subdivision. *Id.* To avoid paying the bank's counsel to prepare the documents to support the loan, it was agreed McClellan would do the

necessary legal paper work. *Id.* The loan was made after McClellan provided an appraisal of the lot to the loan officer and McClellan agreed to prepare the note and deed of trust to secure the indebtedness. *Id.* Although the loan was made, McClellan did not deliver the supporting documents to the bank. *Id.* The bank president asked McClellan to furnish the documents at about the same time the bank president engaged a lawyer to search the deed records. *Id.* When the lawyer could not find a deed of trust from McClellan to the bank, the lawyer asked McClellan to bring his completed copy to the bank. *Id.* McClellan brought a package of papers to the bank and handed them to the bank president saying, "Here is the deed of trust." *Id.* After hearing this and other evidence, the jury convicted McClellan of forgery under the provisions of section 32.21(a)(1)(A)(iii) of the penal code by passing a deed of trust as true when no such original existed. *Id.*

Here, the State charged Horton with presenting a forged document that purported to be a copy of an original when no such original existed. The State proved Horton presented a check to the bank made out to her in the amount of $6,300. However, Horton did not represent the check to be a copy of an original check, but rather she presented a check that purported to be an original check that Weiser had written on his account to Horton for contract work. Unlike the forged document in *McClellan,* which purported to be a copy of an original, Horton presented a forged document that purported to be an original. Although this evidence could have supported a conviction had the State charged Horton using other statutory manner and means that were available, the evidence does not support a conviction for the offense that was actually charged. Because the State failed to prove the statutory language pled, we conclude the evidence is legally insufficient to support Horton's conviction.

 In reaching this conclusion, we necessarily reject the State's contention that Horton failed to preserve her claim of material variance. While Horton did not bring her claim of material variance to the trial court's attention, this Court always has the duty to address any issue of legal sufficiency of the evidence to support a conviction on direct appeal, regardless of whether it was raised in the trial court. *Moff v. State,* 131 S.W.3d 485, 488 (Tex. Crim.App.2004).

Accordingly, we reverse the trial court's judgment and render a judgment of acquittal.