

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-13-00176-CV

IN THE MATTER OF X.J.T.

----------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

X.J.T. appeals a jury verdict adjudicating him guilty of delinquent conduct by committing two counts of aggravated robbery with a deadly weapon and the trial court's order committing him to the Texas Juvenile Justice Department for five years. We modify the trial court's judgment in part and affirm as modified.

**Motion to Suppress**

In his first issue, appellant, who was a sixteen-year-old eleventh-grader at the time of the offenses, contends that the trial court erred by denying his motion

---

[1]*See* Tex. R. App. P. 47.4.

to suppress statements he made to Texas law enforcement officers while he was in Mississippi. Appellant argues that the statements were inadmissible because they were taken in violation of section 51.095 of the Texas family code and the State did not introduce any alternative evidence that the statements were taken in compliance with Mississippi law.

Section 51.095 of the family code provides that a juvenile's statement to officers during a custodial interrogation is admissible only if it complies with a laundry list of safeguards. Tex. Fam. Code Ann. § 51.095(a), (d) (West Supp. 2013). However, section 51.095(b)(2)(B)(i) provides that a statement may otherwise be admissible if it was recorded by an electronic recording device in another state in compliance with that state's laws. *Id.* § 51.095(b)(2)(B)(i). The State does not dispute that appellant was in custody when he made the statement at issue and that the statement was not taken in compliance with section 51.095(a). However, the State contends that appellant has pointed to no evidence showing that the statement was not taken in compliance with Mississippi law.

**Testimony Regarding Statement**

At a hearing outside the jury's presence, Detective Edward Raynsford from the Fort Worth police department testified that he and Detective K.D. Koralewski interviewed appellant in Mississippi in January 2013 at the Leflore County Correctional Facility. An officer from the Greenwood, Mississippi police

2

department, Sergeant Byars, was also present. They recorded a statement from appellant that was about an hour long.

Before the officers obtained the statement, a deputy brought appellant to them from the secured part of the correctional facility. Detectives Raynsford and Koralewski, and Sergeant Byars, walked with appellant into a courtroom and sat in the jury box while appellant appeared before the judge. The judge asked them to approach; Detective Raynsford showed his paperwork and placed a recorder between the judge and appellant. According to Detective Raynsford, everything that took place in the courtroom was recorded. The judge read appellant his rights. The detectives were then "shown out of the back of the courtroom" and went into an interview room. Detective Raynsford testified that the officers had taken their guns off before entering the courtroom, did not have them in the interview room, and were never armed in front of appellant.

Detective Raynsford denied threatening appellant, depriving him of anything he asked for, or making promises to elicit a statement. But he did admit that he told appellant that his brother had made some statements that Detective Raynsford believed "were true at that time" to see how appellant would react. Detective Raynsford explained that he had told appellant truthfully what he had been hearing from other people. Detective Raynsford did not remember appellant's asking for a lawyer or a parent, nor asking to terminate the interview.

Judge Palmer, the justice court judge of Leflore County, testified that his understanding when the detectives visited him was that they were in Mississippi

3

to extradite appellant and transport him back to Texas. Judge Palmer confirmed that appellant would have been considered a juvenile under Mississippi law but that a juvenile charged with armed robbery—the Mississippi equivalent of aggravated robbery—would be treated as an adult. He testified about the initial appearance a person charged with armed robbery would face:

> And at that initial appearance, they are read the charge or charges against them, whatever the matter -- it may be one or several counts. And they also go through basically a checklist of rights that have to be read to that person who is charged with that felony. The judge makes sure they understand those rights.
>
> They are asked whether or not they can afford an attorney. If they cannot afford an attorney, one is provided with -- for them through the public defender's office. And also the bond is also set at that particular proceeding.

He characterized appellant's appearance before him with Detectives Raynsford and Koralewski as such an initial appearance. Judge Palmer confirmed that he read appellant his rights as set forth in exhibits 75 and 76 and that appellant initialed each box, indicating "that he understood his rights . . . based upon the form."

Judge Palmer testified that neither detective made "any moves toward" appellant or threatened him while in the courtroom. He verified that the conversation was recorded. The judge did not remember the officers being in the jury box; he said he thought they were nearby but did not barricade appellant. He also did not remember whether the officers had their weapons, but he said law enforcement officers were allowed to carry weapons in the courtroom.

4

Judge Palmer did not recall setting a bond and thought appellant was before him only to read him his rights. It was the judge's understanding that Texas had a hold on appellant at the time. Judge Palmer also testified that it was possible appellant was being held without bond because of the hold, but he did not know if that was the case. He said during cross-examination that "based upon this situation, it was not requested a bond be set due to the fact that this young person was being extradited." However, Judge Palmer also testified that, regardless, whether appellant was being held without bond did not bear upon the voluntariness of the statement.

Appellant testified that he had been held in a holding cell with "the other grown people" and that he was transported before the judge in handcuffs and shackles. Although Detective Raynsford had denied talking to appellant outside the courtroom other than to say hello, appellant testified that the officers told him how to respond to the judge, that they needed him to sign some papers, and that they needed a statement from him. According to appellant, one of the detectives was armed in the courtroom, the other took out his gun when they came out of the courtroom, and they were both armed in the interview room. Appellant said they had a conversation outside the interview room about what appellant had been involved in and who the officers believed had been involved.

Appellant testified that he felt that he had to talk to the detectives because he had to ride all the way back to Texas with them and they had a "Class A" warrant out for him, which appellant explained meant that he was not supposed

5

to be apprehended and that if he "moved a certain way or flinched or made an attempt to flee," the officers were supposed to shoot him for the purpose of killing him. He said his uncle had told him he heard on the police scanner that Texas had issued a shoot-to-kill warrant for him and his brother. Appellant said he initialed the forms, but he did not understand what the judge read to him. He said Detective Raynsford told him outside the interrogation room that others had told him appellant was involved "so don't BS him." These conversations were not recorded.

Appellant denied that the detectives verbally threatened him, but he also said one of the detectives unclipped his gun holster when appellant said he did not know someone in a photo the detective showed him.

After appellant testified, the State called Detective Raynsford to testify again. Detective Raynsford again denied having a weapon and testified that none of the three officers had a weapon. He did not remember appellant's being handcuffed and shackled. He denied telling appellant what to say or telling him he needed a statement from him. He stated that neither he nor the other officers unsnapped a holster and said that his own holster at the time did not have a snap. He did not know about Detective Koralewski's however. Detective Raynsford denied talking to appellant about returning to Texas, said that he would not have been the one to transport him, and stated that he had never heard of a shoot-to-kill warrant. He denied threatening appellant at any time.

6

Detective Koralewski testified that appellant was not shackled and handcuffed when he was brought to the officers, which surprised him. Detective Koralewski remembered the officers securing their weapons after having been in the courtroom and before going into the interview room.[2] According to Detective Koralewski, the officers were not sitting in the jury box when the judge read appellant his rights but were about five feet away from appellant.

Detective Koralewski testified that Sergeant Byars did not accompany them into the interview room. He also did not recall anyone having a conversation with appellant before they entered the interview room. According to Detective Koralewski, appellant was not handcuffed and shackled in the interview room. He testified that none of the three unsnapped a holster and that he did not have a snap on his holster. He denied that any of the officers threatened appellant or told him it would be a long ride back to Texas.

**Analysis**

At the conclusion of the hearing, appellant's counsel argued that, to be admissible, appellant's recorded statement either had to be in compliance with Texas law or Mississippi law, and it complied with neither. Based on Judge Palmer's testimony that a juvenile defendant in Mississippi is treated like an adult on an aggravated robbery charge and that he usually sets a bond at an initial

---

[2]But he also testified that the officers secured their weapons before entering the facility, not the courtroom, and that the building as a whole was divided between a secured part and a unsecured part, which was the courtroom.

7

appearance, counsel argued that appellant should have been given a chance to have an extradition bond set and that because he did not, the evidence shows appellant's statement was not taken in compliance with Mississippi law.

The State contended that it briefed sufficient Mississippi law and that it was sufficiently complied with.[3] The State also argued that there was no competent testimony about extradition bonds, and even if there had been, the setting of a bond would not affect the voluntariness of appellant's statement or whether it was taken under a proper procedure. The State also pointed out that the totality of the evidence shows that appellant's statement was voluntary. The trial court did not give its reasons for denying the motion to suppress.

At the hearing, both appellant and the State agreed that the recorded statement did not fully comply with section 51.095(a) of the family code. Thus, they also both agreed that if it was otherwise taken in compliance with Mississippi law, then it was procedurally valid and admissible.

On appeal, the State contends that appellant's complaint was not preserved because before the jury, his counsel stated that he had no objection when the statement was introduced. We disagree. "[T]he rule that a later statement of 'no objection' will forfeit earlier-preserved error is context-dependent." *Thomas v. State*, 408 S.W.3d 877, 885 (Tex. Crim. App. 2013); *see also* Tex. R. Evid. 103(a)(1) (providing that when judge hears objection to

---

[3]We have not been provided with any such briefs in the appellate record.

8

evidence offered outside presence of jury and rules evidence admissible, objection need not be repeated when evidence is admitted before jury). Here, the parties litigated the voluntariness of the statement before the jury, including the issue of Judge Palmer's normal procedures in an initial appearance. Additionally, appellant's counsel asked for and received an instruction in the jury charge regarding the admissibility of the statement and argued to the jury that it should consider whether the statement was voluntary in reaching its verdict. Thus, the record as a whole indicates an understanding by the judge and counsel that appellant's counsel did not intend to forfeit the issue of admissibility of the statement by stating, "no objection," when it was offered at trial. *See Thomas*, 408 S.W.3d at 885 ("If the record as a whole plainly demonstrates that the defendant did not intend, nor did the trial court construe, his 'no objection' statement to constitute an abandonment of a claim of error that he had earlier preserved for appeal, then the appellate court should not regard the claim as 'waived,' but should resolve it on the merits."). Thus, we will consider the merits of the issue.

It is settled law that the burden is initially on the defendant to raise an issue regarding the exclusion of proferred evidence by producing evidence of a statutory violation, which then shifts to the State to prove compliance. *Pham v. State*, 175 S.W.3d 767, 772 (Tex. Crim. App.) (reviewing juvenile conviction), *cert. denied*, 546 U.S. 961 (2005). Here, it is doubtful whether appellant met his initial burden. He introduced no evidence that Mississippi law required the

9

consideration or setting of a bond, and Judge Palmer did not testify that appellant would have been entitled to a bond; he just testified generally that consideration of a bond would normally be part of an initial appearance. But even if appellant had introduced evidence showing that Mississippi law would have entitled him to a bond, he nevertheless also had the burden of proving a causal connection between any violation of section 51.095(a) and the statement. *See id.* at 772–74.

Appellant argues on appeal that if he had been able to obtain a bond, he would not have felt it necessary to talk to the detectives. But appellant did not testify to this at the hearing, nor did he argue it before the trial court. The trial court was entitled to believe the testimony of Judge Palmer and the detectives and to resolve any inconsistencies in favor of the voluntariness of the statement. After reviewing all of the evidence presented at the hearing, we hold that appellant failed to meet his burden to show a causal connection between any violation of Texas or Mississippi law and his statement.[4] We overrule his first issue.

**Variance In Witness's Name**

In his second issue, appellant claims that the evidence is insufficient to support the jury's verdict because one of the counts in the petition to adjudicate

---

[4]Having found that appellant failed to show such a causal connection, we need not consider his argument that he has shown harm because of the inadmissible hearsay included in the detectives' questions that can be heard on the statement.

10

alleged that appellant committed an offense against Anju Sharethra, but the witness identified himself at trial as Anuj Shrestha.

A "variance" occurs when there is a discrepancy between the allegations in the charging instrument and the proof at trial. *Gollihar v. State*, 46 S.W.3d 243, 246 (Tex. Crim. App. 2001). A variance between the wording of a charging instrument and the evidence presented at trial is fatal only if "it is material and prejudices [the defendant's] substantial rights." *Id.* at 257. When reviewing such a variance, we must determine whether the charging instrument, as written, informed the defendant of the charge against him sufficiently to allow him to prepare an adequate defense at trial and whether prosecution under the deficiently drafted instrument would subject the defendant to the risk of being prosecuted later for the same crime. *Id.* When the variance arises because of the misspelling of a name, it is the identity of the person, not his formal name, that controls and guides the sufficiency of the evidence review.[5] *Byrd v. State*, 336 S.W.3d 242, 253 (Tex. Crim. App. 2011).

The First Amended Petition to Adjudicate alleged four counts of aggravated robbery: three on December 23, 2012 and one on January 5, 2013.[6] The count alleged to have occurred on January 5, 2013 is the count that alleged

---

[5]Because variance issues are reviewed as sufficiency questions, they need not be preserved at trial. *Horton v. State*, 394 S.W.3d 589, 594 (Tex. App.—Dallas 2012, no pet.).

[6]Before trial began, the State moved to dismiss two of the December 23, 2012 counts without prejudice to refiling, which the trial court granted.

11

"Anju Sharethra" as the victim. The State's pretrial witness list showed the witness as "Anuj Shrestha." At trial, the witness testified that his name was Anuj Shrestha.

After reviewing the record, we conclude that the variance between the spellings of the complainant's name is immaterial. Shrestha testified at trial that he was working at the Quick Way on January 5, 2013 when three young men with guns came into the store and robbed him. There was only one other person in the store at the time; his name was Emanuel, and he was in the walk-in cooler at the time of the robbery. There is no question that Anju Sharethra and Anuj Shrestha are the same person. *See id.* Thus, we overrule appellant's second issue.

In his third issue, appellant casts the same complaint as above as a factual sufficiency complaint. Because we review sufficiency complaints under the criminal standard of review, only the *Jackson* standard, as articulated in the material variance doctrine above, applies. *See In re C.N.*, No. 02-11-00394-CV, 2013 WL 826353, at *1 (Tex. App.—Fort Worth Mar. 7, 2013, no pet.) (mem. op.). Accordingly, we overrule appellant's third issue.

In his seventh issue, appellant requests that this court modify the commitment order to accurately reflect the name of the complainant in the second aggravated robbery count as Anuj Shrestha. The State does not object. Accordingly, we sustain appellant's seventh issue.

12

**Deadly Weapon Finding**

In his fourth issue, appellant complains that the evidence is legally insufficient to support the trial court's deadly weapon finding because there is no evidence that appellant personally used or exhibited a deadly weapon during the commission of the offenses, and he was convicted under the law of parties. The State concedes that section 54.04(g) of the family code requires proof that appellant personally used or exhibited a deadly weapon. Tex. Fam. Code Ann. § 54.04(g) (West Supp. 2013). However, the State contends that there is sufficient evidence to show that appellant personally used or exhibited a deadly weapon during both of the robberies.

Both counts upon which the State proceeded to adjudication alleged that appellant "used or exhibited a deadly weapon, to-wit: a firearm" during the commission of the offense. Although the jury was charged on the law of parties, the special questions for both counts asked as follows:

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 23rd day of December, 2012, in the County of Tarrant and State of Texas, [appellant], either acting alone or as a party, intentionally or knowingly, while in the course of committing theft of property and with the intent to obtain or maintain control of said property, threatened or placed [each complainant] in fear of imminent bodily injury or death, and the Respondent used or exhibited a deadly weapon, namely a firearm, then you will find that the Respondent, [appellant], is a child who has engaged in delinquent conduct by committing aggravated robbery . . . .

For each alleged offense, the jury answered, "We do." The trial court then made the following affirmative finding in the commitment order: "The Court affirmatively

13

finds that the Respondent used or exhibited a deadly weapon, to-wit: a firearm, during the commission of the offense or during the immediate flight therefrom." The order did not distinguish to which singular offense the finding applied.

Shrestha, the clerk in the Quick Way robbery, testified that three young men came into the store on January 5, 2013 and that all three were carrying guns. The one who was holding a handgun came behind the counter and was wearing the same hoodie as a young man who came in earlier to buy something. Appellant's teacher identified appellant as the young man wearing a hoodie who was pointing a gun at Shrestha.

Appellant admits, "There was evidence he was the robber wearing the 'And One' shirt who held a pistol and jumped the counter" in the Quick Way robbery. Accordingly, we conclude and hold that the evidence is sufficient to support the deadly weapon finding in the trial court's commitment order as to the offense alleged in Paragraph Two of the petition to adjudicate.

However, there is insufficient evidence to support a finding that appellant himself used or exhibited a deadly weapon in the commission of the offense alleged in Paragraph One of the petition to adjudicate, the Joe's Food Mart robbery.[7] Therefore, we will modify the commitment order to specify that the

_____

[7]The State contends that the jury could have reasonably determined from the video of the Joe's Food Mart robbery that appellant, who is seen walking into the store before the robbery and buying something, was also one of the three young men who subsequently came into the store with guns. However, all three wore different clothing from appellant and had their faces covered. Moreover, appellant's brother was one of the three; a teacher who had identified appellant

14

deadly weapon finding applies only to the offense alleged in Count Two of the petition to adjudicate.

We sustain appellant's fourth issue in part and overrule it in part.

In his sixth issue, appellant argues that the commitment order should be reformed to delete the deadly weapon finding because the trial judge never found at the conclusion of the disposition hearing that appellant used or exhibited a deadly weapon. Because a deadly weapon finding is not part of a sentence in a criminal case, the trial court is not required to orally pronounce such a finding as part of the sentence if the allegation of use of a deadly weapon is clear from the face of the charging instrument. *Ex parte Huskins*, 176 S.W.3d 818, 820–21 (Tex. Crim. App. 2005). Here, the petition to adjudicate clearly alleged that appellant used a firearm in the commission of both offenses. Appellant points to no law applicable to juvenile cases that would require the trial judge to orally pronounce a deadly weapon finding before it could be included in the commitment order. We overrule appellant's sixth issue.

**Effectiveness of Counsel**

In his fifth issue, appellant contends that to the extent his second, third, fourth, and sixth issues were not preserved, his trial counsel was ineffective.

---

as holding a weapon in the Quick Way robbery, but not the Joe's Food Mart robbery, admitted she may have thought appellant and his brother were twins when she first met them because "they are so similar looking."

Because sufficiency issues such as these need not be preserved for appellate review, we overrule this issue.

## Conclusion

Having sustained appellant's fourth issue in part, we modify the deadly weapon finding in the trial court's commitment order as follows:

> **The Court affirmatively finds that the Respondent used or exhibited a deadly weapon, to-wit: a firearm, during the commission of the offense found by the jury in Special Issue Number Two [the Quick Way offense] or during the immediate flight therefrom.**

Having sustained appellant's seventh issue, we modify the trial court's judgment for determinate sentencing to replace the paragraph entitled, "Special Issue Number Two," as follows:

> Do you find from the evidence beyond a reasonable doubt that the Respondent, [appellant], on or about the 5th day of January, 2013, in the County of Tarrant and State of Texas, engaged in delinquent conduct by committing the offense of aggravated robbery against Anuj Shrestha as hereinbefore defined?

But having overruled appellant's first through third and fifth through sixth issues, and the remainder of his fourth issue in part, we affirm the remainder of the judgment as modified.

/s/ Terrie Livingston
TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL: LIVINGSTON, C.J.; DAUPHINOT and GABRIEL, JJ.

DAUPHINOT, J., filed a dissenting opinion

DELIVERED: February 27, 2014