ACCEPTED
06-15-00063-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
10/30/2015 4:27:33 PM
DEBBIE AUTREY
CLERK

## NO. 06-15-00063-CR

\* \* \* \* \* \* \* \* \* \* \* \* \*

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS

10/30/2015 4:27:33 PM

DEBBIE AUTREY
Clerk

### IN THE COURT OF APPEALS

### SIXTH APPELLATE DISTRICT OF TEXAS

### TEXARKANA TEXAS

\* \* \* \* \* \* \* \* \* \*

DESMOND JUWON WOODS,
Appellant

VS.

THE STATE OF TEXAS,
Appellee

\* \* \* \* \* \* \* \* \* \*

Appealed from the 76TH District Court
Morris County, Texas
Trial Court No. 10,920-CR

_____

### BRIEF OF APPELLANT
_____

EBB B. MOBLEY
State Bar # 14238000
Attorney at Law
422 North Center St.-Lower Level
P. O. Box 2309
Longview, TX   75606
Telephone: (903) 757-3331
Facsimile: (903) 753-8289
ebbmob@aol.com

ATTORNEY FOR APPELLANT

DESMOND JUWON WOODS,
                          Appellant

VS.

THE STATE OF TEXAS,
                          Appellee

_____

## IDENTITY OF PARTIES AND COUNSEL
Pursuant to T.R.A.P. 38.1(a)
_____

| | | |
|---|---|---|
| Appellant: | DESMOND JUWON WOODS<br>Inmate #1996056 | Hutchins State Jail<br>Dallas, Texas 75241 |
| Appellant's<br>trial counsel: | JERRY PRATT JR.<br>Attorney at Law | 603 Broadnax<br>Daingerfield, Texas 75638 |
| State's trial<br>counsel: | STEVE COWAN<br>Morris County Attorney | 500 Broadnax<br>Daingerfield, Texas 75638 |
| Trial Judge: | DANNY WOODSON<br>District Judge | P.O. Box 399<br>Mt. Pleasant, Texas 75456 |
| Appellant's<br>counsel on appeal: | EBB B. MOBLEY<br>Attorney at law | P. O. Box 2309<br>Longview, TX   75606 |
| State's counsel<br>on appeal: | STEVE COWAN<br>Morris County Attorney | 500 Broadnax<br>Daingerfield, Texas 75638 |

# TABLE OF CONTENTS

Page

IDENTITY OF PARTIES AND COUNSEL  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

TABLE OF CONTENTS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

INDEX OF AUTHORITIES  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

STATEMENT OF THE CASE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

ISSUE PRESENTED  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5-10

ISSUE RESTATED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

    Is there sufficient evidence to sustain the judgment of conviction?

    SUMMARY OF THE ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

      ARGUMENT AND AUTHORITIES  . . . . . . . . . . . . . . . . . . . . . . . . . 11-13

PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

.CERTIFICATE OF SERVICE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

# INDEX OF AUTHORITIES

**Cases**

*Beardsley v. State,* 738 S.W.2d 681, 685 (Tex.Crim.App. 1987) . . . . . . . . . . . . . . . . . .13

*Bell v. State,* 326 S.W.3d 716, 720 (Tex.App. - Dallas 2010, pet. dism'd) . . . . . . . . . 11

*Brooks v. State,* 323 S.W.3d 893, 912 (Tex.Crim.App. 2010) . . . . . . . . . . . . . . . . . . . 11

*Guevara v. State,* 152 S.W.3d 45, 49 (Tex.Crim.App. 2004) . . . . . . . . . . . . . . . . . . . .13

*Hooper v. State,* 214 S.W.3d 9, 13 (Tex.Crim.App. 2007) . . . . . . . . . . . . . . . . . .11,12,13

*Horton v. State,* 394 S.W.3d 589, 592 (Tex.App. - Dallas 2012, no pet.) . . . . . . . . . . .12

*Jackson v. Virginia,* 443 U.S. 307, 319 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

*Malik v. State,* 953 S.W.2d 234, 240 (Tex.Crim.App. 1997) . . . . . . . . . . . . . . . . . . . 12

*Robertson v. State,* 888 S.W.2d 493 (Tex.App. - Amarillo 1994 pet. ref'd) . . . . . . . . .13

*Wise v. State,* 364 S.W.3d 900, 903 (Tex.Crim.App. 2012) . . . . . . . . . . . . . . . . . . . . 13

**Statutes**

Penal Code §28.03(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

Penal Code §28.06(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

All references to Texas statutes, rules, etc. are to the latest edition published by West Publishing Company, unless otherwise indicated.

## STATEMENT OF THE CASE

This is an appeal for conviction for felony criminal mischief. DESMOND JUWON WOODS was tried and convicted by a jury. The court then assessed punishment at eight (8) years confinement. CR-108.

This case is a companion case to No. 06-15-00068-CR pending in this court wherein DESMOND JUWON WOODS was convicted of felony theft of copper and assessed punishment of 2 years in state jail. The cases were tried together and the sentences run concurrently.

The State is referred to as the State and the Appellant is referred to as the defendant, the Appellant, or Woods.

## ISSUE PRESENTED

Is there sufficient evidence to sustain the judgment of conviction?

# STATEMENT OF FACTS

<u>HERSHEL STROMAN</u>

Hershel Stroman testified for the State. Deputy Stroman was a deputy sheriff for Morris County. 3 RR 32. Deputy Stroman testified that he took a call from Mrs. Bullock on December 24, 2012 regarding her chicken houses and missing copper wiring. 3 RR 34. He stated that Mrs. Bullock reported that her copper wire had been taken from her chicken houses. He said that Mrs. Bullock had six chicken houses and that four of them were vandalized and the copper was removed. 3 RR 35. Deputy Stroman met Mrs. Bullock at the scene and she told him that someone had stripped the wire out of her chicken houses. He found vandalism and evidence of theft at the scene. 3 RR 44. He testified that there were wires where the copper was cut. He also stated that there was yellow styrofoam insulation in the buildings. 3 RR 45. The yellow foam covered the wires. 3 RR 46. Deputy Stroman testified that the wire was cut in numerous different spots. 3 RR 47. Deputy Stroman testified that he searched around the outside of the chicken houses. 3 RR 49. He stated that he followed a foam trail through the woods. 3 RR 52-53. He testified that there was a fence line with styrofoam insulation at the fence and several bits of styrofoam where the wire would have been pulled through the fence. 3 RR 55. He stated that there were bits of styrofoam stuck to a fence post. 3 RR 56. Deputy Stroman testified that the styrofoam trail led him to 585 County Road 1231, the home of Desmond Woods. He stated that Mr. Woods's house is approximately one-half to three-quarters of a mile from Mrs. Bullock's chicken houses. He said that he followed the foam trail from Mrs. Bullock's farm to Mr. Woods's house. Deputy Stroman said there was a burn pile located at the residence of 585 County Road 1231 with styrofoam insulation

with pieces in it. 3 RR 58. He confirmed that it was the same type of styrofoam insulation that he had been trailing and that the trail led him directly to the burn pile. 3 RR 59. He went on to say that there were other burned areas beside the house. He testified that there was a 3500 Chevrolet truck, license plate AD2-2120 or AU2-2120 at the house. 3 RR 60. Deputy Stroman testified that after he walked through the woods to the burn pile, he went Road 1231. He said that he knew that to be the residence of Desmond Woods. He stated that he knocked on the door but no one answered. He said he then took photos of the burn pile and backyard. 3 RR 63-64.

Deputy Stroman testified that he made efforts to determine what happened to the copper that was stolen. He said that he went to Daingerfield Iron & Metal and made contact with Mike and Jessica Rice, the owners. He stated that to his knowledge there were only two places in Morris County that can buy copper, Daingerfield Iron & Metal and John's scrap. He said that he inquired about copper purchases at Daingerfield Iron & Metal. 3 RR 64. Deputy Stroman testified that he ascertained that Mr. Woods had made copper sales to Daingerfield Iron in the time period of November and December and that Daingerfield Iron still had some of the iron it had just bought from Mr. Woods. He said that he went to Daingerfield Iron on December 24th. 3 RR 65. Deputy Stroman stated that the wire Daingerfield Iron had on hand that it had recently purchased from Mr. Woods was a different gauge and style of wire than the wire that was stolen from Mrs. Bullock's chicken houses. 3 RR 67. He said that this wire was significant because it appeared to be burned. 3 RR 66. Deputy Stroman testified that he then did an affidavit and requested a warrant for Mr. Woods's arrest for the theft of copper. 3 RR 68. Deputy Stroman stated that he

arrested Mr. Woods on December 26th. 3 RR 69.

Deputy Stroman testified that he took Mr. Woods into custody for the copper theft, read him his Miranda rights, but did not obtain a written statement. 3 RR 70. He said that he interviewed Mr. Woods on the 26th in his office at the Morris County sheriff's office but did not obtain a recorded statement. 3 RR 71.

Deputy Stroman testified that according to the Rice's records, Mr. Woods had made substantial sales of copper from November 20, 2012, throughout November and December up until the time of the burglary. He said that according to those records several hundred pounds of copper was purchased by the scrap yard. 3 RR 74. Deputy Stroman testified that there was a receipt, signed by Mr. Woods on November 27, 2012. The receipt included Mr. Woods's license number and identified a vehicle as a Chevy, model 3500, color gray, license plate number AU2-2120. The receipt reflected that Daingerfield Iron purchased metal from Mr. Woods on November 27, 2012, including twenty-four pounds of #1 copper. Deputy Stroman testified that the records reflected that on November 20th, Daingerfield Iron had purchased 142 pounds of #1 copper from Mr. Woods. He stated that on November 21st, Daingerfield Iron purchased 75 pounds of #1 copper from Mr. Woods. 3 RR 7. He said that records further reflected that on November 23rd, Daingerfield Iron purchased 24 pounds of #1 copper. On November 27th, Daingerfield Iron purchased four pounds of copper from Mr. Woods. He said that on November 30th, Daingerfield Iron purchased seventeen pounds from Mr. Woods. On December 12th, Daingerfield Iron purchased twelve pounds of #1 copper from Mr. Woods. Deputy Stroman testified that on December 14th, Daingerfield Iron purchased twenty-four pounds of copper from Mr. Woods. On December 17th, Daingerfield Iron purchased two pounds of

copper from Mr. Woods. On December 18th, Daingerfield Iron purchased five pounds of copper from Mr. Woods. 3 RR 76. He confirmed that on December 20th, Daingerfield Iron purchased ten pounds of #1 copper from Desmond Woods. 3 RR 77.

On cross examination, Deputy Stroman testified that he did not determine how much wire was taken from the chicken houses. He said that he did determine that the house had not had chickens in it in over a month. He stated that he did not check the date, but only went by Mrs. Bullock's word. He said that he did not really know when the copper could have come out. 3 RR 84. Deputy Stroman testified that he spoke with Robin Allen and she said that she saw a tall man with a black shirt on around the chicken houses on approximately December 19th. He said that she told him further than she checked the houses but did not see anything. 3 RR 92. Deputy Stroman stated that he did not know the gauge of the wire that was taken out of the chicken houses. 3 RR 93.

On redirect examination, Deputy Stroman testified that the copper stolen was 100% copper. 3 RR 106.

During re-cross examination, Deputy Stroman testified that he was not aware of any copper tubing having been taken out of the chicken houses and that he did not report any copper tubing being taken out. 3 RR 107.

RANDY ACKER

Randy Acker testified for the State. He was the owner of Acker Poultry Supply in Pittsburg, Texas. 3 RR 111. He said that he builds poultry houses and equips poultry houses. He said that he also repairs poultry houses and gives estimates on damaged poultry houses when vandalized. He testified that he and one of his workers

went out to Mrs. Bullock's farm to look at the damage that had been done to her chicken houses. 3 RR 112. He said that Ricky Richardson took the measurements of what repairs needed to be done. 3 RR 112-113. He said that he made the repairs and the estimate was $23,423.05. 3 RR 113. He stated that the repairs to house number one totaled $6,046.43. The repairs to house number three totaled $6,046.43. The repairs to house number four totaled $6,046.43. The repairs to house number two totaled $9,283.76. 3 RR 114. Mr. Acker testified that the total cost of the repairs was over $27,000. 3 RR 115.

On cross examination, Mr. Acker testified that approximately 4,070 feet of wire was taken out of each house. He said it was 12/2 Romex with gound; twelve guage. 3 RR 116.

On re-direct examination, Mr. Acker testified that he knew how much wire he had to replace, but did not know how much wire was taken out of the chicken houses. 3 RR 119.

MIKE RICE

Mike Rice testified for the State. He was the owner of Daingerfield Iron and Metal scrap yard. 3 RR 122. He said that his wife, Jessica Rice, also owns and works at the scrap yard. He said that he knows Desmond Woods and that Mr. Woods has sold copper to his business. 3 RR 123. Mr. Rice testified to the number of pounds of copper Mr. Woods sold to him in November and December. 3 RR 126. Mr. Rice stated that #1 copper will be bigger than a pencil lead in wire or copper tubing. He said this type of copper could be more than 50% copper. 3 RR 130. Mr. Rice testified that Mr. Woods sold him wire on December 24th, but it was not the kind of wire that came out of the chicken houses. 3 RR 135.

ALICE BULLOCK

Alice Bullock testified for the State. Mrs. Bullock testified that she called the sheriff's department on December 24, 2012 because she had no power in four of her chicken houses. 3 RR 140. She said that she had been without chickens for over a month or more; that the last chickens went out in the middle of November. 3 RR 141. She said that she had not had any reason to be in the chicken houses that had been vandalized since the chickens went out. 3 RR 142. She said that the wires were stripped and clipped then jerked off the wall and drug out the back door. 3 RR 143. Mrs. Bullock testified that when she found out she had no power she called Mr. Acker who sent two men out to repair it. The men found that she had no electrical wiring and that was why she had no power. She said that she then called the sheriff.

Mrs. Bullock testified that when Officer Stroman arrived they walked around the chicken house to the back and found a trail of pieces of foam and followed the foam across her property into neighboring property. 3 RR 145.

## ISSUE RESTATED

Is there sufficient evidence to sustain the judgment of conviction?


## SUMMARY OF THE ARGUMENT

There is no testimony by any State's witness that connects appellant to any damage of the Bullock chicken houses. The defendant's possible presence at or near the scene of the crime, without other evidence linking him to commission of the damage in question, is not sufficent to prove beyond a reasonable doubt the defendant committed criminal mischief. A finding of guilt based on nothing more than mere speculation should be reversed and a judgment of aquittal rendered.


## ARGUMENT  AND AUTHORITIES

In reviewing the legal sufficiency of the evidence, this count reviews all the evidence in the light most favorable to the verdict to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State,* 323 S.W.3d 893, 912 (Tex.Crim.App. 2010) (citing *Jackson v. Virginia,* 443 U.S. 307, 319 (1979)); *Bell v. State,* 326 S.W.3d 716, 720 (Tex.App. - Dallas 2010, pet. dism'd) (citing *Brooks,* 323 S.W.3d at 898). Legal sufficiency is analyzed under the direction of the *Brooks* opinion, while giving deference to the responsibility of the trier of fact "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State,* 214 S.W.3d 9, 13 (Tex.Crim.App. 2007) (citing *Jackson,* 443 U.S. at 318-19). "We defer to the jury's determinations of the witnesses' credibility and the weight to be given their testimony because the jury is the sole judge of those matters." *Bell,* 326 S.W.3d at 720 (citing *Brooks,* 323 S.W.3d at 899).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by the "hypothetically correct jury charge." *Malik v. State,* 953 S.W.2d 234, 240 (Tex.Crim.App. 1997); *Horton v. State,* 394 S.W.3d 589, 592 (Tex.App. - Dallas 2012, no pet.) . The hypothetically correct jury charge "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Horton,* 394 S.W.3d at 592 (quoting *Malik,* 953 S.W.2d at 240).

A person commits criminal mischief by damage or destruction if he intentionally or knowingly damages or destroys the tangible property of an owner without the owner's consent. Penal Code §28.03(a)(1). The amount of pecuniary loss to the owner determines the degree of the offense. If the property is damaged, the pecuniary loss is "the cost of repairing or restoring the damaged property within a reasonable time after the damage occurred." Penal Code §28.06(b).

Deputy Stroman followed a trail of insulation from the chicken houses over the hills and through the woods to the rear of a residence at 585 CR 1231 in Morris County. He saw a burn pile with foam scrap and saw a pickup truck with the same license number as a truck driven by the appellant when he sold scrap metal to Daingerfield Iron and Metal. The address in question appeared on a number of official law enforcement records concerning the appellant.

But a mailing address is often a matter of convenience. A license plate number identifies the owner of a certain vehicle, but not the whereabouts of that vehicle or any particular driver or its use for any particular purpose on any given occasion.

Because factfinders are permitted to make reasonable inferences, both direct and circumstantial evidence are probative to a case and it is possible for circumstantial evidence alone to be enough to establish guilt. *Hooper v. State*, 214

S.W.3d 9, 14-15 (Tex.Crim.App. 2007); *Guevara v. State,* 152 S.W.3d 45, 49 (Tex.Crim.App. 2004). The standard of review for sufficiency of the evidence is the same whether the evidence is direct or circumstantial. *Wise v. State,* 364 S.W.3d 900, 903 (Tex.Crim.App. 2012). Not every fact presented must directly indicate the defendant is guilty, but the cumulative force of the evidence can be sufficient to support a finding of guilt. *Beardsley v. State,* 738 S.W.2d 681, 685 (Tex.Crim.App. 1987). Mere possible presence at the scene of the crime is insufficient to support a conviction . See *Robertson v. State,* 888 S.W.2d 493 (Tex.App. - Amarillo 1994 pet ref'd).

A strong suspicion or mere probability of guilt are insufficient. In examining the evidence, factfinders are not permitted to make conclusions based on unsupported inferences or to guess at the possible meaning of a piece of evidence. *Hooper,* 214 S.W.3d at 15-16. While such a guess may be a reasonable one, it is not sufficient to support a finding of an element beyond a reasonable doubt because it is not based on facts. The evidence as to criminal mischief is much less than for theft of copper. Argument and inference are not enough to sustain a conviction.

## **PRAYER**

Upon the issue presented, the judgment of the trial court should be reversed and a judgment of acquittal rendered.

Respectfully submitted,

EBB B. MOBLEY
Attorney at Law
422 North Center St - Lower Level.
P. O. Box 2309
Longview, TX   75606
Telephone: (903) 757-3331
Facsimile: (903) 753-8289

/s/ Ebb B. Mobley
**EBB B. MOBLEY**
State Bar # 14238000

ATTORNEY FOR APPELLANT

## **CERTIFICATE OF COMPLIANCE**

I certify that this brief contains 3224  words according to the computer program used to prepare the document.

/s/ Ebb B. Mobley
EBB B. MOBLEY

## **CERTIFICATE OF SERVICE**

A copy of this brief was provided to Steve Cowan, Morris County Attorney, 500 Broadnax, Daingerfield, Texas 75638 on the 30th day of October, 2015, by e-file.

/s/ Ebb B. Mobley
**EBB B. MOBLEY**