ACCEPTED
06-15-00068-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
11/25/2015 12:32:41 PM
DEBBIE AUTREY
CLERK

## NO. 06-15-00068-CR

### IN THE COURT OF APPEALS

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
12/1/2015 9:55:00 AM
DEBBIE AUTREY
Clerk

### SIXTH APPELLATE DISTRICT OF TEXAS

### TEXARKANA TEXAS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### DESMON JUWON WOODS, Appellant

### V.

### THE STATE OF TEXAS, Appellee

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Appealed from the 76th District Court

Morris County, Texas

Trial Court No. 10,976 CR

# STATE'S BRIEF

**STEVE COWAN**
State Bar #14912300
Morris County Attorney
500 Broadnax
Daingerfield, TX 75638
(903) 645-2021  Fax: (903) 645-7666

1

**TABLE OF CONTENTS**                   **Page**

TABLE OF CONTENTS ……………………............. 2

INDEX OF AUTHORITIES …………………........... 3

REPLY TO ISSUE NUMBER ONE………………........... 4

   **Sufficient evidence exists to sustain a conviction for Theft of Copper.**

SUMMARY OF STATE'S ARGUMENT……………........... 4

   **The State's evidence was legally sufficient.**

ARGUMENTS AND AUTHORITIES …… ……........... 4, 10

PRAYER …………………………………............. 16

CERTIFICATE OF COMPLIANCE ……………............. 17

CERTIFICATE OF SERVICE …………………......... 17

# INDEX OF AUTHORITIES

**STATUTES**

Penal Code Section 31.03(a)(b)(e)(f).................……..................................8

**CASES**

*Brooks v. State,* 323 S.W.3d 893, 912 (Tex.Crim.App.2010*)...............* 6,10

*Gollithar v. State*, 46 S.W.3d 243 (Tex.Crim.App. 2001).........................7,8

*Horton v. State*, 395 S.W.3d 589, 592 (Tex.App.--Dallas 2012, no pet.)...6

*Johnson v. State*, 364 S.W.3d 292,294,298 (Tex.Crim.App. 2012)......... 8

*Malik v. State,* 953 S.W.2d 234,240 (Tex. Crim. App. 1997)...................7

*Spencer v. State*, 867 S.W.2d 81,85 (Tex.App.--Texarkana 1993)......... 7

**STATEMENT OF THE CASE**

This case is an appeal from a jury trial in which Desmon Woods was convicted of the offense of Theft of Material/Aluminum/Bronze/Copper under $20,000, a state jail felony. The theft was of copper wire from four chicken houses. The judge assessed his punishment at 2 years in the state jail.

Appellant was simultaneously tried and convicted for Criminal Mischief over $20,000. The mischief was $27,000 in damages to the chicken houses when the wire was stripped out by the thief. The judge sentenced him to 8 years in TDCJ-ID concurrent with his state jail sentence.

Appellant claims legally insufficient evidence. He also appealed from the criminal mischief verdict claiming legally insufficient evidence to sustain a finding of guilt in Cause Number 06-15-00063-CR.

## SUMMARY OF STATE'S ARGUMENT

The theft of *any* amount of copper less than $20,000 is by law a state jail felony.

The state alleged in the indictment a *theft of copper*...although it admits the indictment went further and described the particular type of copper stolen as *copper tubing*. CR 8. It was in fact copper...but it was *copper wire*. Under Penal Code section 31.03(f), a theft of any property containing more than 50% copper, regardless of how small it is, is a state jail felony.

The indictment was sufficient to apprise the defendant with his offense. No surprise or lack of notice was claimed. In fact, there was no surprise or lack of notice. The criminal mischief to the chicken houses was tried at the same time. No objection was made to the indictment, the evidence or the jury charge.

Defense counsel refers to the alleged offenses against his client during ***voir dire*** as a theft of copper from chicken houses and discusses how much the wiring would have weighed. *3* RR 30.

Legally sufficient evidence exists to support the verdict finding appellant guilty of Theft of Material 50% Aluminum/Bronze/Copper less than $20,000 under Penal Code Section 31.03(f).

**ARGUMENT AND AUTHORITIES**

The appellate court reviews all the evidence in the light most favorable to the verdict in reviewing the legal sufficiency of the evidence. *Brooks v. State,* 323 S.W. 3d 893, 912 (Tex.Crim.App.2010).

Legal sufficiency of the evidence  is measured by the elements of the offense as defined by the "hypothetically correct jury charge". *Malik v. State,* 953 S.W.2d 234, 240 (Tex.Crim.App.1997).

The hypothetically jury charge **does not unnecessarily increase the State's burden of proof**." *Horton v. State*, 394 S.W.3d 589, 592 Tex.App.-Dallas 2012,no pet.). **To prove a theft of copper against Mr. Woods,** *the State did not need to allege* **or prove the copper stolen was** *copper tubing,* **since any type or amount of copper stolen was sufficient to be a state jail felony under the theft statute.**

The description as tubing was unnecessary surplusage, not an element of the crime.

6

In *Spencer v. State,* the Texarkana Court of Appeals was confronted with an allegation in an indictment containing unnecessary words similar to this situation. The indictment recited a truck VIN number and no one could remember it, although it was clear the truck was stolen.

This Court called upon the Court of Criminal Appeals to:

"overturn the outdated exception to the variance rule as it applies to indictments. Blind, unthinking adherence to an outdated vestige from the past, which has no redeeming qualities other than its pedigree, serves neither justice nor reason and renders the guilt or innocence of the criminal defendant essentially irrelevant." *Spencer v. State.* 867 S.W.2d 81,85 (Tex.App--Texarkana 1993).

I agree. More importantly, so did the Court of Criminal Appeals. When confronted with an insufficiency claim in a case involving an indictment that described a stolen go-cart with a certain model number and the number could not be proven. In *Gollithar v. State,* the Court held:

"We hold the variance was not material and therefore should be disregarded in a sufficiency of the evidence review under a hypothetically correct jury charge. Because appellant's insufficiency

claim is based solely on the variance, our inquiry is ended. An immaterial variance is disregarded in an insufficiency of the evidence review. Appellant's claim has no merit." *Gollithar v. State*, 46 S.W.3d 243,258 (Tex.Crim.App. 2001).

Further, in 2012, the Court of Criminal Appeals shed more light when it comes to variances in theft allegations. It distinguished "statutory allegations" and "non-statutory allegations". **A non-statutory allegation was described as an immaterial variance and would not result in the evidence being insufficient if not proven**. *Johnson v. State*, 364 S.W.3d 292,298 (Tex.Crim.App. 2012).

In our theft of copper case, the allegation that Desmon Woods appropriated copper *tubing* was immaterial **and not in the statute**.

The Penal Code just requires "copper" to be stolen to create an offense. A hypothetically correct jury charge does not need a description of the copper, only an allegation that copper was unlawfully appropriated without the owner's consent.

So the only question that remains is--

Could any rational jury have found Desmon Woods guilty of unlawfully appropriating copper from Alice Bullock ?

(**NOTE: This brief will now recite the trial evidence as it did in the State's Brief responding to appellant's appeal of his criminal mischief conviction.)

**Alice Bullock** said she discovered on December 24, 2012, that her chicken houses had been stripped of copper wire sometime between the middle of November and Christmas Eve, 2012. 3 RR 140,

The copper electrical wire had been ripped off the wall and drug out the back door. 3 RR 143.

She and Deputy Stroman followed a trail of foam insulation from her houses to a neighbor's house at 585 CR 1231. 3 RR 145.

**Deputy Hershel Stroman** said the neighbor was Desmon Woods. The deputy knew Woods personally and knew he lived there at 585 County Road 1231.

In Woods' back yard was a burn pile with pieces of foam insulation in it. 3 RR 60-65.

Deputy Stroman went to Daingerfield Iron and Metal and discovered Woods had just been there on December 24th and sold a different type of copper than was ripped out of the chicken houses. 3 RR 67. However, Stroman had the owner, Mike Rice, pull *ten* earlier receipts for the month between November 20th and December 20th.

Those documents showed Woods selling Rice #1 copper numerous times during that time period. Copper exceeding 300 pounds was bought by Rice from Woods during that 30 day period. 3 RR 4-77.

Appellant correctly recites the basic facts in his Statement of the Case; however, for obvious reasons, appellant downplays the significance of the exhibits introduced by the State.

**STATE'S EXHIBITS 24-33**

On November 20th Woods sold 142 pounds of #1 copper.

The next day he sold 75 pounds.

Two days later he sold 24 pounds.

The next day he sold 4 pounds.

Six days later, he sold 17 pounds.

Two weeks later, he sold 12 pounds.

Two days later, he sold 24 pounds.

Then 3 days later, he sold 2 pounds.

The next day, he sold 5 pounds.

Then 2 days later on December 20th, he sold 10 more pounds.

Unfortunately for Mr. Woods, he produced his driver's license to be photocopied as an ID to the scrap yard. Plus, Woods signed his name. It was really not necessary, since Mr. Rice knew Mr. Woods anyway. 3 RR 123.

Particularly harmful to the defense, was the description of the seller's truck written on the receipt for November 30: Grey truck, License Plate AU22120. Exhibit 24.

The foam trail led from the chicken houses through the woods approximately 900 yards to the back yard of Desmon Woods' residence. Exhibit 19-24. Google Earth photograph, Exhibit 41.

The address on the driver license of Woods was 585 CR 1231. Exhibits 24-31.

The burn pile was at 585 CR 1231. Exhibit 20.

The grey pickup with license plate number AU22120 was in the carport next to the burn pile. Exhibit 28. On one occasion, that same truck delivered the stolen copper to the scrap yard. Exhibit 24.

The burn pile contained yellow foam insulation matching the foam insulation inside Alice Bullock's chicken houses. Exhibit 20,

The same foam had been sprayed over the wiring that had been ripped out of her chicken houses. Exhibit 9-24.

Stroman testified insulation is burned off electric wire before it is sold. 3 RR 58. The items Woods sold December 24th had been burned.3 RR 62.

**Randy Acker**, a chicken house builder, said the criminal mischief to the chicken houses exceeded $27,000. 3 RR 112-116. He said approximately 4000 feet of copper electrical wire was stripped from each of the four chicken houses. 3 RR 116. The repairs to the four houses exceeded $6000 each. 3 RR 113.

**Mike Rice**, the owner of the scrap yard, said the copper he purchased from Woods was #1 copper. 3 RR 105. (Except the cable he purchased from Woods on December 24th was different ). 3 RR 135, Exhibit 34.

All Rice purchased from Woods was 100% copper. 3 RR 106.

Rice said #1 copper was solid copper or copper tubing without solder joints. 3 RR 130. Electric wire with no insulation is pure copper.

All the purchased copper was more than 50% copper. 3 RR 130.

The defense admitted the wire stolen from the chicken houses was all #1 copper. 3 RR 30.

**Metals Registration Receipt**

Mike Rice produced a Metals Registration Receipt which is required by the State of Texas. This receipt indicated Woods sold Rice over 400 pounds of copper from November 16 to December 24, but almost nothing during the months prior to Mrs. Bullock's chicken houses being stripped. Exhibit 24.

In sum, the evidence is overwhelming to show, circumstantially and directly through testimony, photographs and receipts, that Desmon Woods damaged his neighbor's chicken houses when he stripped the wire from it . Then he dragged the wire covered in foam through the

14

woods to his backyard where burned the insulation off and sold the wire to Mike Rice as #1 copper.   The undisputed evidence was in the ten documents which conclusively proved Woods sold Rice almost 400 pounds of #1 copper during the period that the vandalism and theft took place.

**Desmon Woods left a trail of foam and documents that prove his guilt**.

**STANDARD OF REVIEW**

In reviewing the legal sufficiency of the evidence, this court reviews all the evidence in the light most favorable to the verdict to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. Brooks v. State, 323 S.W.3d 893. 912 (Tex.Crim.App.2010)

**CONCLUSION ON ISSUE ONE**

The verdict was true. The trial court should be affirmed.

**PRAYER**

The State urges the Court to affirm the trial court.

The evidence clearly was sufficient to prove Woods' guilt..

Respectfully Submitted,

/s/*Steve Cowan*_____

**STEVE COWAN**
Morris County & District Attorney
500 Broadnax
Daingerfield, Texas 75638
(903) 645-2021, Fax (903) 645-7666
e-mail steve.cowan@co.morris.tx.us
State Bar #04912300
ATTORNEY FOR THE STATE

**CERTIFICATE OF COMPLIANCE**

I certify that this brief contains 2058 words according to the computer program used to prepare this brief.

/s/*Steve Cowan*_____
STEVE COWAN


**CERTIFICATE OF SERVICE**

A copy of this brief was e-mailed to Ebb Mobley, P. O. Box 2309, Longview, TX 75606 on the 25th day of November, 2015.

/s/*Steve Cowan*_____
STEVE COWAN

17