ACCEPTED
06-15-00068-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
10/30/2015 4:04:24 PM
DEBBIE AUTREY
CLERK

## NO. 06-15-00068-CR

\* \* \* \* \* \* \* \* \* \* \* \* \*

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS

10/30/2015 4:04:24 PM

DEBBIE AUTREY
Clerk

IN THE COURT OF APPEALS

SIXTH APPELLATE DISTRICT OF TEXAS

TEXARKANA TEXAS

\* \* \* \* \* \* \* \* \* \*

DESMOND JUWON WOODS,
                    Appellant

VS.

THE STATE OF TEXAS,
                    Appellee

\* \* \* \* \* \* \* \* \* \*

Appealed from the 76TH District Court
Morris County, Texas
Trial Court No. 10,976-CR

_____

## BRIEF OF APPELLANT
_____

EBB B. MOBLEY
State Bar # 14238000
Attorney at Law
422 North Center St.-Lower Level
P. O. Box 2309
Longview, TX   75606
Telephone: (903) 757-3331
Facsimile: (903) 753-8289
ebbmob@aol.com

ATTORNEY FOR APPELLANT

DESMOND JUWON WOODS,
                                        Appellant

VS.

THE STATE OF TEXAS,
                                        Appellee

_____

**IDENTITY OF PARTIES AND COUNSEL**
Pursuant to T.R.A.P. 38.1(a)
_____


| | | |
|---|---|---|
| Appellant: | DESMOND JUWON WOODS<br>Inmate #1996056 | Hutchins State Jail<br>Dallas, Texas 75241 |
| Appellant's<br>trial counsel: | JERRY PRATT JR.<br>Attorney at Law | 603 Broadnax<br>Daingerfield, Texas 75638 |
| State's trial<br>counsel: | STEVE COWAN<br>Morris County Attorney | 500 Broadnax<br>Daingerfield, Texas 75638 |
| Trial Judge: | DANNY WOODSON<br>District Judge | P.O. Box 399<br>Mt. Pleasant, Texas 75456 |
| Appellant's<br>counsel on appeal: | EBB B. MOBLEY<br>Attorney at law | P. O. Box 2309<br>Longview, TX   75606 |
| State's counsel<br>on appeal: | STEVE COWAN<br>Morris County Attorney | 500 Broadnax<br>Daingerfield, Texas 75638 |

# TABLE OF CONTENTS

Page

IDENTITY OF PARTIES AND COUNSEL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ISSUE PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5-11

ISSUE RESTATED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    Is there sufficient evidence to sustain the judgment of conviction?

        SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        ARGUMENT AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . 12-14

PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# INDEX OF AUTHORITIES

**Cases**

*Allen v. U.S.,* 164 U.S. 492, 502 (1896) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Aprevealo v. State,* 489 S.W.2d 569, 571 (Tex.Crim.App. 1973) . . . . . . . . . . . . . . . .10

*Beardsley v. State,* 738 S.W.2d 681, 685 (Tex.Crim.App. 1987) . . . . . . . . . . . . . . . .14

*Bell v. State,* 326 S.W.3d 716, 720 (Tex.App. - Dallas 2010, pet. dism'd) . . . . . . . . . 12

*Brooks v. State,* 323 S.W.3d 893, 912 (Tex.Crim.App. 2010) . . . . . . . . . . . . . . . . . . .12

*Guevara v. State,* 152 S.W.3d 45, 49 (Tex.Crim.App. 2004) . . . . . . . . . . . . . . . . . . . .14

*Hooper v. State,* 214 S.W.3d 9, 13 (Tex.Crim.App. 2007) . . . . . . . . . . . . . . . . . . . . 12,14

*Horton v. State,* 394 S.W.3d 589, 592 (Tex.App. - Dallas 2012, no pet.) . . . . . . . . .12,13

*Jackson v. Virginia,* 443 U.S. 307, 319 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

*Malik v. State,* 953 S.W.2d 234, 240 (Tex.Crim.App. 1997) . . . . . . . . . . . . . . . . . . 12,13

*Tidwell v. State,* No. 06-07-00046-CR, 2007 Tex.App. LEXIS 8008,
        (Tex.App. - Texarkana, October 10, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

*Wise v. State,* 364 S.W.3d 900, 903 (Tex.Crim.App. 2012) . . . . . . . . . . . . . . . . . . . . 14

**Statutes**

Penal Code §31.03(a)(b)(e)(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

All references to Texas statutes, rules, etc. are to the latest edition published by West Publishing Company, unless otherwise indicated.

## STATEMENT OF THE CASE

This is an appeal from a conviction for theft of copper. DESMOND JUWON WOODS was tried and convicted by a jury. The court then assessed punishment at two (2) years confinement in a state jail. CR-108.

This case is a companion case to No. 06-15-00063-CR pending in this court wherein DESMOND JUWON WOODS was convicted of felony criminal mischief by a jury, and the judge assessed punishment of eight (8) years. The cases were tried together and the sentences run concurrently.

The State is referred to as the State and the Appellant is referred to as the defendant, the Appellant, or Woods.

## ISSUE PRESENTED

Is there sufficient evidence to sustain the judgment of conviction?

HERSHEL STROMAN

Hershel Stroman testified for the State. Deputy Stroman was a deputy sheriff for Morris County. 3 RR 32. Deputy Stroman testified that he took a call from Mrs. Bullock on December 24, 2012 regarding her chicken houses and missing copper wiring. 3 RR 34. He stated that Mrs. Bullock reported that her copper wire had been taken from her chicken houses. He said that Mrs. Bullock had six chicken houses and that four of them were vandalized and the copper was removed. 3 RR 35. Deputy Stroman met Mrs. Bullock at the scene and she told him that someone had stripped the wire out of her chicken houses. He found vandalism and evidence of theft at the scene. 3 RR 44. He testified that there were wires where the copper was cut. He also stated that there was yellow styrofoam insulation in the buildings. 3 RR 45. The yellow foam covered the wires. 3 RR 46. Deputy Stroman testified that the wire was cut in numerous different spots. 3 RR 47. Deputy Stroman testified that he searched around the outside of the chicken houses. 3 RR 49. He stated that he followed a foam trail through the woods. 3 RR 52-53. He testified that there was a fence line with styrofoam insulation at the fence and several bits of styrofoam where the wire would have been pulled through the fence. 3 RR 55. He stated that there were bits of styrofoam stuck to a fence post. 3 RR 56. Deputy Stroman testified that the styrofoam trail led him to 585 County Road 1231, the home of Desmond Woods. He stated that Mr. Woods's house is approximately one-half to three-quarters of a mile from Mrs. Bullock's chicken houses. He said that he followed the foam trail from Mrs. Bullock's farm to Mr. Woods's house. Deputy Stroman said there was a burn

pile located at the residence of 585 County Road 1231 with styrofoam insulation pieces in it. 3 RR 58. He confirmed that it was the same type of styrofoam insulation that he had been trailing and that the trail led him directly to the burn pile. 3 RR 59. He went on to say that there were other burned areas beside the house. He testified that there was a 3500 Chevrolet truck, license plate AD2-2120 or AU2-2120 at the house. 3 RR 60. Deputy Stroman testified that after he walked through the woods to the burn pile, he went Road 1231. He said that he knew that to be the residence of Desmond Woods. He stated that he knocked on the door but no one answered. He said he then took photos of the burn pile and backyard. 3 RR 63-64.

Deputy Stroman testified that he made efforts to determine what happened to the copper that was stolen. He said that he went to Daingerfield Iron & Metal and made contact with Mike and Jessica Rice, the owners. He stated that to his knowledge there were only two places in Morris County that can buy copper, Daingerfield Iron & Metal and John's scrap. He said that he inquired about copper purchases at Daingerfield Iron & Metal. 3 RR 64. Deputy Stroman testified that he ascertained that Mr. Woods had made copper sales to Daingerfield Iron in the time period of November and December and that Daingerfield Iron still had some of the iron it had just bought from Mr. Woods. He said that he went to Daingerfield Iron on December 24th. 3 RR 65. Deputy Stroman stated that the wire Daingerfield Iron had on hand that it had recently purchased from Mr. Woods was a different gauge and style of wire than the wire that was stolen from Mrs. Bullock's chicken houses. 3 RR 67. He said that this wire was significant because it appeared to be burned. 3 RR 66. Deputy Stroman testified that he then did an affidavit and requested a warrant for Mr.

Woods's arrest for the theft of copper. 3 RR 68. Deputy Stroman stated that he arrested Mr. Woods on December 26th. 3 RR 69.

Deputy Stroman testified that he took Mr. Woods into custody for the copper theft, read him his Miranda rights, but did not obtain a written statement. 3 RR 70. He said that he interviewed Mr. Woods on the 26th in his office at the Morris County sheriff's office but did not obtain a recorded statement. 3 RR 71.

Deputy Stroman testified that according to the Rice's records, Mr. Woods had made substantial sales of copper from November 20, 2012, throughout November and December up until the time of the burglary. He said that according to those records several hundred pounds of copper was purchased by the scrap yard. 3 RR 74. Deputy Stroman testified that there was a receipt, signed by Mr. Woods on November 27, 2012. The receipt included Mr. Woods's license number and identified a vehicle as a Chevy, model 3500, color gray, license plate number AU2-2120. The receipt reflected that Daingerfield Iron purchased metal from Mr. Woods on November 27, 2012, including twenty-four pounds of #1 copper. Deputy Stroman testified that the records reflected that on November 20th, Daingerfield Iron had purchased 142 pounds of #1 copper from Mr. Woods. He stated that on November 21st, Daingerfield Iron purchased 75 pounds of #1 copper from Mr. Woods. 3 RR 7. He said that records further reflected that on November 23rd, Daingerfield Iron purchased 24 pounds of #1 copper. On November 27th, Daingerfield Iron purchased four pounds of copper from Mr. Woods. He said that on November 30th, Daingerfield Iron purchased seventeen pounds from Mr. Woods. On December 12th, Daingerfield Iron purchased twelve pounds of #1 copper from Mr. Woods. Deputy Stroman testified that on December 14th, Daingerfield Iron purchased twenty-four pounds of copper

from Mr. Woods. On December 17th, Daingerfield Iron purchased two pounds of copper from Mr. Woods. On December 18th, Daingerfield Iron purchased five pounds of copper from Mr. Woods. 3 RR 76. He confirmed that on December 20th, Daingerfield Iron purchased ten pounds of #1 copper from Desmond Woods. 3 RR 77. On cross examination, Deputy Stroman testified that he did not determine how much wire was taken from the chicken houses. He said that he did determine that the house had not had chickens in it in over a month. He stated that he did not check the date, but only went by Mrs. Bullock's word. He said that he did not really know when the copper could have come out. 3 RR 84. Deputy Stroman testified that he spoke with Robin Allen and she said that she saw a tall man with a black shirt on around the chicken houses on approximately December 19th. He said that she told him further than she checked the houses but did not see anything. 3 RR 92. Deputy Stroman stated that he did not know the gauge of the wire that was taken out of the chicken houses. 3 RR 93.

On redirect examination, Deputy Stroman testified that the copper stolen was 100% copper. 3 RR 106.

During re-cross examination, Deputy Stroman testified that he was not aware of any copper tubing having been taken out of the chicken houses and that he did not report any copper tubing being taken out. 3 RR 107.

RANDY ACKER

Randy Acker testified for the State. He was the owner of Acker Poultry Supply in Pittsburg, Texas. 3 RR 111. He said that he builds poultry houses and equips poultry houses. He said that he also repairs poultry houses and gives estimates on

damaged poultry houses when vandalized. He testified that he and one of his workers went out to Mrs. Bullock's farm to look at the damage that had been done to her chicken houses. 3 RR 112. He said that Ricky Richardson took the measurements of what repairs needed to be done. 3 RR 112-113. He said that he made the repairs and the estimate was $23,423.05. 3 RR 113. He stated that the repairs to house number one totaled $6,046.43. The repairs to house number three totaled $6,046.43. The repairs to house number four totaled $6,046.43. The repairs to house number two totaled $9,283.76. 3 RR 114. Mr. Acker testified that the total cost of the repairs was over $27,000. 3 RR 115.

On cross examination, Mr. Acker testified that approximately 4,070 feet of wire was taken out of each house. He said it was 12/2 Romex with ground; twelve gauge. 3 RR 116.

On re-direct examination, Mr. Acker testified that he knew how much wire he had to replace, but did not know how much wire was taken out of the chicken houses. 3 RR 119.

MIKE RICE

Mike Rice testified for the State. He was the owner of Daingerfield Iron and Metal scrap yard. 3 RR 122. He said that his wife, Jessica Rice, also owns and works at the scrap yard. He said that he knows Desmond Woods and that Mr. Woods has sold copper to his business. 3 RR 123. Mr. Rice testified to the number of pounds of copper Mr. Woods sold to him in November and December. 3 RR 126. Mr. Rice stated that #1 copper will be bigger than a pencil lead in wire or copper tubing. He said this type of copper could be more than 50% copper. 3 RR 130. Mr. Rice

testified that Mr. Woods sold him wire on December 24th, but it was not the kind of wire that came out of the chicken houses.  3 RR 135.

ALICE BULLOCK

Alice Bullock testified for the State.  Mrs. Bullock testified that she called the sheriff's department on December 24, 2012 because she had no power in four of her chicken houses.  3 RR 140.  She said that she had been without chickens for over a month or more; that the last chickens went out in the middle of November.  3 RR 141. She said that she had not had any reason to be in the chicken houses that had been vandalized since the chickens went out.  3 RR 142.  She said that the wires were stripped and clipped then jerked off the wall and drug out the back door.  3 RR 143. Mrs. Bullock testified that when she found out she had no power she called Mr. Acker who sent two men out to repair it.  The men found that she had no electrical wiring and that was why she had no power.  She said that she then called the sheriff.

Mrs. Bullock testified that when Deputy Stroman arrived they walked around the chicken house to the back and found a trail of pieces of foam and followed the foam across her property into neighboring property.  3 RR 145.

The defendant offered no testimony, rested, and closed. 3 RR 168-170.

The jury subsequently sent out notes indicating it was hung 10 for guilty, 2 for not guilty.  CR-97-100, 3 RR 198.    The Court without objection gave an Allen[1] charge.  CR-101, 3 RR 200. The jury subsequently returned a verdict of guilty.  CR-

---

[1]*Allen v. U.S.,* 164 U.S. 492, 502 (1896); *Aprevealo v. State,* 489 S.W.2d 569, 571 (Tex.Crim.App. 1973); *Tidwell v. State,* No. 06-07-00046-CR, 2007 Tex.App. LEXIS 8008, (Tex.App.– Texarkana, October 10, 2007).

104.

The defendant withdrew his election for sentencing by a jury. 4 RR 5-16. The defendant called 3 witnesses and testified in his own behalf in support of probation from the court. 4 RR 66.

In response to a defense motion for a directed verdict because of lack of proof of theft of copper tubing as alleged in the indictment 4 RR 19, the State proposed dismissing the theft case to seek a corrected indictment to correspond to what was obviously unexpected testimony by all of the State witnesses that the copper sold to Dangerfield Iron and Metal did not match the wire from the chicken house and was not in any event copper tubing. The trial judge overruled the defense motion. 4 RR 105, 5 RR 4.

The Court assessed punishment at two years on the theft charge and eight years on the criminal mischief case. 4 RR 110, 5 RR 5.

## ISSUE RESTATED

Is there sufficient evidence to sustain the judgment of conviction?

## SUMMARY OF THE ARGUMENT

No evidence links the appellant to the copper stolen from the Bullock chicken houses.

## ARGUMENT AND AUTHORITIES

In reviewing the legal sufficiency of the evidence, this court reviews all the evidence in the light most favorable to the verdict to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State,* 323 S.W.3d 893, 912 (Tex.Crim.App. 2010) (citing *Jackson v. Virginia,* 443 U.S. 307, 319 (1979)); *Bell v. State,* 326 S.W.3d 716, 720 (Tex.App. - Dallas 2010, pet. dism'd) (citing *Brooks,* 323 S.W.3d at 898). Legal sufficiency is examined under the direction of the *Brooks* opinion, while giving deference to the responsibility of the trier of fact "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State,* 214 S.W.3d 9, 13 (Tex.Crim.App. 2007) (citing *Jackson,* 443 U.S. at 318-19). "We defer to the jury's determinations of the witnesses' credibility and the weight to be given their testimony because the jury is the sole judge of those matter." *Bell*, 326 S.W.3d at 720 (citing *Brooks,* 323 S.W.3d at 899).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by the "hypothetically correct jury charge." *Malik v. State,* 953 S.W.2d 234, 240 (Tex.Crim.App. 1997); *Horton v. State,* 394 S.W.3d 589, 592 (Tex.App. - Dallas 2012, no pet.). The hypothetically correct jury charge "accurately sets out the

law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Horton,* 394 S.W.3d at 592 (quoting *Malik,* 953 S.W.2d at 240).

Based on the indictment CR-6 and the statute, Penal Code §31.03(a )(b)(e)(f), the State had to prove that Desmond Juwon Woods, in Morris County, Texas:

1). appropriated property (copper tubing. . . of at least 50% aluminum or copper)

2). of value less than $20,000.00

3). without the owner's effective consent

4). with the intent to deprive the owner of the property (Alice Bullock)

Appellant challenges the legal sufficiency of the State's circumstantial evidence.

There is simply no evidentiary connection in the record between the copper from the       chicken houses and the copper sold to Daingerfield Iron and Metal over the  space of several weeks.   Stroman's testimony showed that the defendant  sold scrap metal on numerous occasions.  3 RR 74.  But here is no testimony showing when anyone " stripped  copper" subsequent sold metal on a given date. Indeed Stroman testified that

STATE:

Q.     Well, that's what they buy, but tubing is not what the indictment says was taken out of this house was copper tubing.  (sic) There wasn't any copper tubing taken out of the chicken house, was it?  That you know of?

A.     I believe it's #1 copper.

Q.     Was there any copper tubing taken out of the chicken houses?

A.     Not that I'm aware of.

Q.     Okay.  And you didn't report any copper tubing being taken out.

A.     No.

In opening argument the State reminded the jury of what was needed to be proven and that circumstantial evidence cannot be argued with.   3 RR 186.  The defense pointed out the gaps and conflicts in the State's case.   3 RR 187.  The State closed with ad hominem attacks on the defendant as a thief and indignant  remarks that the defense blamed the case on the deputy and Mrs. Bullock.  3 RR 194.

Factfinders are permitted to make reasonable inferences and both direct and circumstantial evidence are probative to a case.  It is possible for circumstantial evidence alone to be enough to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 14-15 (Tex.Crim.App. 2007); *Guevara v. State,* 152 S.W.3d 45, 49 (Tex.Crim.App. 2004). The standard of review for sufficiency of the evidence is the same whether the evidence is direct or circumstantial.   *Wise v. State,* 364 S.W.3d 900, 903 (Tex.Crim.App. 2012).  Not every fact presented must directly indicate the defendant is guilty, but the cumulative force of the evidence can be sufficient to support a finding of guilt.  *Beardsley v. State,* 738 S.W.2d 681, 685 (Tex.Crim.App. 1987).

A strong suspicion or mere probability of guilt are insufficient.  *Id.* In examinging the evidence, factfinders are not permitted to make conclusions based on unsupported inferences or to guess at the possible meaning of a piece of evidence. *Hooper,* 214 S.W.3d at 15-16.  While such a guess may be a reasonable one, it is not sufficient to support a finding of an element beyond a reasonable doubt because it is not based on facts.

Argument is no substitute for evidence.  The State simply did not make its case.

## PRAYER

Upon the issue presented, the judgment of the trial court should be reversed and a judgment of acquittal rendered.

Respectfully submitted,

EBB B. MOBLEY
Attorney at Law
422 North Center St - Lower Level.
P. O. Box 2309
Longview, TX  75606
Telephone: (903) 757-3331
Facsimile: (903) 753-8289

/s/ Ebb B. Mobley
**EBB B. MOBLEY**
State Bar # 14238000

ATTORNEY FOR APPELLANT

## CERTIFICATE OF COMPLIANCE

I certify that this brief contains <u>3480</u>  words according to the computer program used to prepare the document.

/s/ Ebb B. Mobley
EBB B. MOBLEY

## CERTIFICATE OF SERVICE

A copy of this brief was provided to Steve Cowan, Morris County District Attorney, 500 Broadnax, Daingerfield, Texas 75638 on the 30th  day of October, 2015, by e-file.

/s/ Ebb B. Mobley
**EBB B. MOBLEY**